UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| BENANCIO MARTIN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-cv-00618-JAW |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION**

The Social Security Administration found that Benancio Martin, 31 years old as of the date of alleged onset of disability, has degenerative disk disease of the lumbar spine, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Martin's application for disability benefits under Title II and Title XVI of the Social Security Act. Martin commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 4 and 5 of the sequential evaluation process. I recommend that the Court affirm the administrative decision.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## The Administrative Findings

The Commissioner's final decision is the July 17, 2009, decision of Administrative Law Judge John Edwards (doc. no. 12-2 at 14-24), because the Decision Review Board did not complete its review during the time allowed (id. at 2). Judge Edwards's decision tracks the familiar five-step sequential evaluation process for social security disability claims.

At Step 1 of the sequential evaluation process, the Judge found that Martin meets the insured status requirements of Title II through June 30, 2011, and has not engaged in substantial gainful activity since February 1, 2008, the amended date of alleged onset of disability. (Findings 1 & 2.)

At Step 2, the Judge found that Martin's alleged respiratory impairment and mental impairments are non-severe for purposes of Step 2, but that the following severe physical impairments are present: "minimal-to-mild degenerative disk disease of the lumbar spine." (Finding 3.)

At Step 3, the Judge found that this combination of impairments would not meet or equal any listing within the Commissioner's Listing of Impairments. (Finding 4.)

At Step 4, the Judge found that the medical evidence and other evidence of record reasonably demonstrates that Martin's combined impairments do not prevent him from performing medium-exertion work, except that he may only climb ladders, ropes, and scaffolds occasionally and must avoid frequent exposure to cedar dust. (Finding 5.) The Judge found that this degree of limitation precluded past relevant work of landscape laborer, labor material handler, mover, assembler of cedar products, and leather hanger. (Finding 6.)

At Step 5, the Judge found, based on vocational expert testimony, that Martin could still engage in other substantial gainful employment, including in the representative occupations of vehicle cleaner, grocery bagger, and sandwich maker, at the medium level of exertion, or inserter, cleaner, and fast food worker, at the light level of exertion. (Finding 10.)

**Discussion of Plaintiff's Statement of Errors**

Martin does not challenge the Judge's findings at Steps 1, 2, or 3. Nor does Martin raise an objection to the Judge's assessment that he is able to engage in medium exertion work, subject to only limited avoidance of certain obstacles and total avoidance of cedar dust. Instead, Martin contends that the Judge misjudged his educational background as a vocational factor by characterizing it as limited, without discussing in his decision Martin's allegedly remedial math skills. (Statement of Errors at 3-6.) The record reflects that Martin completed the ninth grade, withdrew from school at the end of his tenth grade year, and briefly attended eleventh grade. Martin reports earning only a D in Math 1 and a 61% grade in a transition math course. According to Martin, he received educational services in school for math and other courses, cannot competently multiple or divide, and can only add and subtract single digits. (Statement of Errors at 5, citing Disability Report, R. 236; Work History Report, R. 261; Quinn, Ph.D., Consulting Exam. Report, R. 319 (reciting subjective report of math skills); Newport Family Practice Note , R. 376 (same); Martin's Hr'g Testimony, R. 35-36.)

Martin faults the hypothetical that the Judge presented to the vocational expert because he says that it misrepresents his educational background as "limited," or as "ninth grade," when, in fact, his academic experience reflects a lesser degree of math skill. (Statement of Errors at 3-4.) Martin asserts that he adequately generated the issue in the record so that the Judge should

have (1) addressed pointedly in his decision whether or not Martin meets the "limited education" level described in the Commissioner's regulations and (2) queried the vocational expert whether Martin's professed shortcomings in math prevent him from performing jobs described in the Department of Labor's Dictionary of Occupational Titles as requiring "level 1" or "level 2" math skills. Martin observes that five of the six jobs identified by the vocational expert at hearing require math skills at level 1, while the fast food worker requires level 2 math skills. (Id. at 4-5.)

At Step 4 of the sequential evaluation process, the Commissioner evaluates the claimant's residual functional capacity (RFC) in relation to the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Vocational factors such as age and education are not considered at Step 4. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden at Step 4 rests with the claimant, Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987), but at Step 5 the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 419.920(g). This shifting burden entails a "responsib[ility] for providing evidence that demonstrates that other work exists in significant numbers . . . that you can do, given your residual functional capacity *and vocational factors*." Id. § 404.1560(c)(2), 419.960(c)(2) (emphasis added). The Commissioner must prove that the claimant's RFC, in combination with the additional vocational factors of age, education, and work experience, enable the performance of other substantial work. Ordinarily, the Commissioner will meet the step 5 burden, or not, by eliciting vocational expert testimony in response to a hypothetical question about whether a person with the claimant's RFC and specific vocational factors would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

The three educational levels described in the Commissioner's regulations are "marginal," "limited," and "high school and above." 20 C.F.R. § 404.1564(b). According to the regulations: "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." Id. § 404.1564(b). The Commissioner's regulations describe a limited education as follows:

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 404.1564(b)(3). In comparison, a marginal education is described as follows:

> Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

Id. § 404.1564(b)(2). The regulations state that the SSA will ask a claimant about his or her ability to "do at least simple calculations in arithmetic." Id. § 404.1564(b)(6).

At the hearing, the Judge permitted Martin's representative to question Martin first and the representative elicited Martin's testimony about limited proficiency in math. Consequently, it cannot be said that there was no inquiry into the matter. Thereafter, the Judge proposed a hypothetical to the vocational expert of an individual with a ninth grade education. The Judge did not propose an alternative involving someone with marginal math skills. After receiving the vocational expert's testimony about representative jobs that such a person could perform, the Judge allowed Martin's representative to question the vocational expert. Martin's representative failed to ask what impact Martin's testimony about math skills, if credited, would have on the jobs identified by the vocational expert. (R. 59-62.) Ultimately, the Judge made no mention of

5

Martin's allegations concerning limited math ability in his decision.

In support of his request for remand, Martin cites the recommended decision adopted by the Court in Todd v. Astrue, No. 09-9-B-W, 2009 U.S. Dist. Lexis 94784, *8-10, 2009 WL 3148726, *3 (D. Me. Sept. 30, 2009). There, the Court found that remand was warranted because the administrative law judge did not address an alleged difficulty with basic mathematics despite receiving testimony from the claimant and her mother on the issue. The Court noted that no medical evidence supported the allegation and also that the residual functional capacity assigned to the claimant restricted her to unskilled jobs. Nevertheless, the Court found that remand was appropriate because "case law suggests that the testimony of the plaintiff and her mother in this case was sufficient to require the administrative law judge at least to consider the possibility that the plaintiff's difficulty with basic mathematics was an additional limitation on her ability to work." Id. (collecting cases). Note that this was not the only reason for the remand.

A more recent decision in this District is in slight tension with Todd. In Dana v. Astrue, the Court affirmed a recommended decision, in the absence of any objection, which cast the issue in terms of whether or not there was medical evidence supporting the claimant's report of less than basic math skills. No. 09-cv-514-B-W, 2010 U.S. Dist. Lexis 95814, *11-14, 2010 WL 3397465, *4 (D. Me. Aug. 24, 2010) ("A claimant's self-report does not constitute acceptable medical evidence on which an administrative law judge may, let alone must, base an RFC finding."). In Dana, the claimant professed a third-grade level of proficiency in math and certain medical experts had made note of the claimant's subjective report without diagnosing or evaluating a deficiency. However, it appears that the claimant was attempting to introduce the issue on appeal as a component of a challenge to a residual functional capacity finding, rather

6

than as a vocational factor supported by her own testimony. The recommendation was that the medical records did not generate the issue and that the claimant's own testimony was not sufficient to establish a medical impairment. Additionally, an alternative recommendation was to affirm in light of evidence of a third-grade math ability level, the vocational expert's identification of a cleaner/janitor job for step 5 purposes, and out-of-district precedent to the effect that a third-grade ability level is consistent with a Dictionary of Occupational Titles GED mathematics level of 1. Id.

At oral argument in this case, the Commissioner argued that the record contains sufficient evidence of adequate computational skills to render the issue moot, including evidence that Martin can manage his own funds (R. 321), a transcript reflecting a D grade in Math I and a 61 in transition math (R. 370), past work as a laborer and assembler in different industries (R. 184-89, 255-59), and Martin's testimony that he could help his daughter with some of her math homework when she was in the second grade (R. 36-37.) The Commissioner also referenced evidence demonstrating an ability to cook meals for the family and to play cards with family and friends, though there is no indication that these activities necessarily involve basic math skills. Finally, the Commissioner referenced the mental RFC assessment performed by Dr. Lewis Lester on behalf of the Disability Determination Services, noting that Dr. Lester found Martin capable of simple work. (R. 332.) However, Dr. Lester also observed that he found Martin's description of diminished intellectual functioning and lack of multiplication skills to be generally credible. (Id.)

The Judge based his own assessment of any alleged mental health impairment on a psychiatric review technique performed by Dr. David Houston, M.D., who found the evidence of affective disorder and anxiety disorder to be insufficiently severe to call for a mental residual

functional capacity finding. (See R. 342, 352, 354.) Although the Judge had substantial evidence to support his finding that no mental health condition was present, the Judge did not pause to consider remedial math skills as a potential vocational factor, as distinct from an impairment secondary to a mental health condition. The regulations call for vocational factors such as education level to be treated separately at Step 5. 20 C.F.R. §§ 404.1520(g), 416.920(g); 404.1560(c), 416.960(c). For this reason, I do not recommend that the issue be treated as subsumed within the Judge's finding concerning mental residual functional capacity. The progression of the hearing in this case illustrates the point.

At the hearing, the vocational expert testified that the residual functional capacity finding, when considered in combination with Martin's age, past work experience, and a "ninth-grade education" would permit a person to perform cleaning work and fast food restaurant work that Martin had performed in his past. (R. 53-54.) However, the work in question was performed by Martin in the remote past, more than 15 years prior to the hearing (R. 55-57), so it did not afford an adequate justification for a step 4 finding, 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). This explains why the Judge based his decision on a step 5 finding. Had the work in question been more recent, and therefore amenable to a finding that Martin's residual functional capacity enabled him to perform his past relevant work, then the Judge would not have needed to consider the additional vocational factors of age, education, and work experience. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). But because the work was so remote, the sequential analysis rolled past Step 4 and vocational factors became material to the analysis. 20 C.F.R. §§ 404.1560(c), 416.960(c).

Because vocational factors are not simply a by-product of the residual functional capacity analysis at Step 4, I reject the Commissioner's suggestion that the presence of a mental residual

8

functional capacity assessment describing a capacity for simple work is enough to overcome a complete failure to acknowledge evidence of marginal math skills. The Commissioner's regulations have put in place a relatively simple process. It calls not only for some consideration of evidence contradicting the "limited education" presumption that otherwise arises from completion of a certain grade level, 20 C.F.R. §§ 404.1564(b), 416.964(b), but also for some evaluation of whether a given level of math skill will enable a claimant to perform a particular occupation, 20 C.F.R. §§ 404.1560(c), 416.960(c).

Here, the Judge simply disregarded the issue and ignored the evidence, which would ordinarily mean that his step 5 finding is not conclusive. Nguyen, 172 F.3d at 35. However, there are other legal currents flowing through this case. First, it is not clear whether the failure to assess less than limited math skills is actually material to the step 5 decision. For example, even a layperson reasonably would question whether basic math skills are needed in at least three of the occupations identified by the vocational expert (vehicle cleaner, grocery bagger, and sandwich maker).[1] Although lack of clarity on a material issue is ordinarily not a basis for affirming, particularly at Step 5, this Court has often observed in the context of disability claims that it will not remand for development of an issue that a claimant failed to show was material to the disability determination, at least where the claimant was represented at hearing, as was Martin. Faria v. Comm'r of Soc. Sec., No. 97-2421, 1998 U.S. App. Lexis 26013, *2, 1998 WL 1085810, * 1 (1st Cir. Oct. 2, 1998) (unpublished) ("When a claimant is represented, the ALJ[ ] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's

---

[1] The Commissioner's Medical-Vocational Guidelines also raise a red flag because they indicate that a younger individual, without any transferrable skills and only limited or less education, is not precluded from performing substantial gainful activity if he or she is capable of medium-exertion work, as is Martin. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 203.25 (emphasis added). In effect, the Commissioner would be entitled to take administrative notice of the fact that a significant number of unskilled jobs exist for Martin, as a younger individual with a capacity for medium-exertion work, but for the fact that there are the non-exertional restrictions associated with cedar dust and certain obstacles like scaffolds, which prevent a straight Guidelines analysis at Step 5.

9

case in a way that claimant's claims are adequately explored.") (citations and internal quotation marks omitted).

Ordinarily, one would expect a vocational expert to address the extent to which marginal math skills would erode the unskilled job base and to address whether or not marginal math skills correspond with a job to which the Dictionary of Occupational Titles assigns a math reasoning level of 1 or 2.[2] Social Security Ruling 00-4p, 2000 SSR Lexis 8, *4-5, 2000 WL 1898704, *2. In this case, the Judge did not pursue that line of questioning with the vocational expert. However, he did permit Martin's representative to question the vocational expert and Martin's representative had, after all, just developed Martin's testimony in support of the issue. It is not easily understood why the representative did not ask whether Martin's allegedly remedial math skills would preclude the specific jobs identified by the vocational expert, unless he anticipated an unfavorable response.

Remanding for further development of this case is not warranted because Martin fails to demonstrate that remand would be something other than "an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000). There is a common sense assessment in this case that three of the occupations in question, those that happen to have the level one math score in the DOT, would not require an exercise of math skill beyond what Martin describes. Given this common sense understanding and the absence of any testimony to counter it, the vocational

---

[2] According to the Dictionary of Occupational Titles, level 2 mathematical development reflects the following competencies: "Add, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." Dictionary of Occupational Titles, Appx. C, § III (explaining the general educational development (GED) categories). Level 1 mathematical development calls for the following competencies: "Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." Id.
  The vocational expert in this case did testify that his testimony would be consistent with the Dictionary of Occupational Titles and its companion publication, Elected Characteristics of Occupations. (R. 52-53.) Of course, the hypothetical presented him with a worker having a ninth-grade education.

expert's testimony supplies substantial evidence in support of the Judge's step 5 finding. Martin does not suggest that these jobs do not exist in significant numbers in the national economy. My recommendation would certainly be otherwise, if common sense were not aligned against this issue or if Martin's representative had laid a foundation through the vocational expert that Martin's math skills would preclude the jobs in question. If Martin had established this position, then it would be essential that the Judge either accept the vocational expert's testimony or else explain the evidentiary basis for his finding of a limited education as opposed to a marginal education. In the absence of such development, remand would appear to be nothing more than an empty exercise.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 21, 2010